Argued and submitted April 9, affirmed December 15, 2021, petition for review denied April 21, 2022 (369 Or 675)

Amanda SMITH,
*Plaintiff-Appellant,*

*v.*

AIRBNB, INC.,
a foreign corporation,
*Defendant-Respondent,*

*and*

Barry DENNIS,
*Defendant.*

## Multnomah County Circuit Court
18CV32897; A173133

504 P3d 646

Plaintiff brought multiple claims against defendants Dennis and Airbnb, Inc., for injuries that she sustained at a rental property owned by Dennis and listed on Airbnb's website. Plaintiff now appeals a limited judgment entered as to defendant Airbnb. She contends that the trial court erred when it granted summary judgment in favor of Airbnb based on a determination that Airbnb's liability was foreclosed under section 230 of the Communications Decency Act of 1996 (CDA 230), 47 USC § 230 (2018), which immunizes website operators from liability arising from third-party content. More specifically, plaintiff contends that several activities undertaken by Airbnb in relation to Dennis's rental listing are so extensive that Airbnb is no longer a mere service provider but is also a content provider, and therefore, Airbnb falls outside the immunity provided under CDA 230. *Held*: Airbnb's activities, as identified by plaintiff, did not materially contribute to the alleged unlawfulness of Dennis's rental listing that appeared on Airbnb's website; therefore, the trial court did not err in granting Airbnb's motion for summary judgment.

Affirmed.

Christopher J. Marshall, Judge.

J. Randolph Pickett argued the cause for appellant. Also on the briefs were Kristen W. McCall, Kimberly O. Weingart, and Pickett Dummigan McCall LLP.

Kathleen C. Bricken argued the cause for respondent. Also on the brief was Foster Garvey PC.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Affirmed.

**TOOKEY, J.**

Plaintiff brought multiple claims against defendants Dennis and Airbnb, Inc., for injuries she sustained at a rental property owned by Dennis and listed on Airbnb's website. Plaintiff now appeals a limited judgment entered as to Airbnb.[1] We reject without discussion plaintiff's assignment of error related to document production, and we write only to address plaintiff's contention that the trial court erred by granting summary judgment in favor of Airbnb based on a determination that Airbnb's liability was foreclosed under section 230 of the Communications Decency Act of 1996 (CDA 230), 47 USC § 230 (2018), which immunizes website operators from liability arising from third-party content. We conclude that CDA 230 provides immunity to Airbnb in this case, and therefore, the trial court did not err in granting Airbnb's motion for summary judgment. Affirmed.

"We review a trial court's grant of summary judgment for legal error, and we will affirm if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." *Towner v. Bernardo/Silverton Health*, 304 Or App 397, 400, 467 P3d 17, *rev den*, 367 Or 115 (2020). "There is '[n]o genuine issue as to a material fact' when 'no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment.'" *Id.* (quoting ORCP 47 C). We view the facts and all reasonable inferences that may be drawn from them in the light most favorable to the nonmoving party. *Id.* at 401.

## BACKGROUND

To celebrate plaintiff's birthday, her significant other, Havens, used Airbnb's website to book a weekend at the Old Barn in the Woods (Old Barn)—a vacation rental owned by Dennis. Dennis had used Airbnb's website to create a listing for the Old Barn. In so doing, he wrote a paragraph describing the Old Barn, and he voluntarily checked a box in a drop-down menu to indicate that, among other amenities, the Old Barn had a hot tub. Dennis's listing did not contain any warnings about hot tub safety.

---

[1] The claims against defendant Dennis were abated pending this appeal.

On the day plaintiff and Havens arrived at the Old Barn for check in, Dennis was present and gave them a brief tour of the premises. The parties did not discuss the hot tub, which was located on a deck about 10 to 12 feet above a driveway and surrounded by a railing that was lower than required by the applicable building code. Plaintiff subsequently consumed about five alcoholic beverages throughout that evening, and around 2:00 a.m., she and Havens both went to bed. Plaintiff was unable to fall asleep, however, so she decided to use the hot tub alone. While in the hot tub, plaintiff felt "faint," as though she "was going to pass out." Feeling "dizzy" and "panicked," plaintiff attempted to climb out of the hot tub but fell over the deck railing to the driveway below, sustaining numerous physical injuries. As a result, plaintiff lay in the driveway until Havens discovered her there at around 8:00 a.m.

Plaintiff subsequently brought vicarious- and premises-liability claims against Dennis and Airbnb based on the unsafe condition of, and inadequate warnings about, the hot tub. With respect to Airbnb, plaintiff specifically alleged that Airbnb failed to "properly vet potential rental listings" on its website; failed "to obtain adequate control over" Dennis's Old Barn listing on its website; and failed to provide "basic hot tub safety" warnings to users of Airbnb's website.

Airbnb moved for summary judgment, arguing, among other points, that under CDA 230, "Airbnb cannot be held liable for the content, or lack of content, on defendant Dennis's listing, as a matter of established law." Plaintiff opposed summary judgment, and a hearing was held on Airbnb's motion.

At that hearing, Airbnb reiterated that, under CDA 230, Airbnb was immune to liability based on the content, or lack of content, provided to its website by third-party content providers like Dennis. Plaintiff responded, in essence, that Airbnb was immune under CDA 230 only if "they're simply passing on the content that Mr. Dennis provides to them without organizing it, categorizing it, [or] giving it rankings," and that Airbnb was "doing more than just simply passing on the information from Mr. Dennis." After

some discussion, the trial court sought to clarify plaintiff's position:

> "THE COURT: [W]hat I hear you saying is \*\*\*, once Airbnb takes the information that [Dennis] has provided and puts the two words 'hot tub' with an emoji next to it, then that somehow has added to or subtracted from the content that was provided by [Dennis] in a way that takes away the immunity.
>
> "Are you saying that repeating those words under a heading that says 'amenities' \*\*\* somehow that takes away the immunity?
>
> "[PLAINTIFF'S COUNSEL]: Yes, Your Honor. That's exactly what we're saying."

Airbnb responded that "all of the factors [plaintiff's counsel is] talking about which he thinks creates or makes Airbnb an information content provider" had been previously rejected by courts interpreting and applying CDA 230.

Ultimately, the trial court granted Airbnb's motion for summary judgment and issued an order stating that there was no genuine issue of material fact relating to plaintiff's claims against Airbnb, and, as a matter of law, Airbnb was immune under CDA 230. The trial court then entered a limited judgment in favor of Airbnb, which plaintiff now appeals.

On appeal, plaintiff argues that the trial court "erred in granting Airbnb's motion for summary judgment on the basis that the CDA bestowed immunity on" Airbnb, because "Airbnb acted as a curator of its website entries" by "creating a special search category" for listings with hot tubs and "highlighting" those listings; "adding icons" to rental listings with hot tubs;[2] asking "targeted questions" and "encourage[ing] individuals to specify whether their property has a hot tub, which is displayed in the listing"; and allowing individuals listing their property to "choos[e] answers from drop-down menus." Given "[t]his level of activity," plaintiff argues, Airbnb "is not immune from liability."

---

[2] The record shows that the specific icon (or emoji) at issue in this case is a small, gray rectangle with three squiggly lines above, which is presumably intended to depict a steaming hot tub. That icon appears in Dennis's Airbnb listing for the Old Barn beside the words "Hot tub," under the heading "Amenities."

In response, Airbnb argues that the trial court did not err in granting summary judgment, because plaintiff "seeks to hold Airbnb liable as a publisher of [Dennis's] content," which "falls squarely within CDA 230's protections." Airbnb further argues that a website "is not required to be a passive conduit" in order to enjoy immunity under CDA 230, because "CDA 230 allows websites to perform some editing on user-generated content," and "courts consistently have held that arranging and organizing third-party content or making minor edits to such content does not take a platform outside of CDA 230's protections."

Given the parties' arguments, the dispute in this case centers on whether the activities identified by plaintiff take Airbnb outside the immunity provided by CDA 230. We begin our analysis by explaining the immunity provided under CDA 230 before turning to its application in this case.

## CDA 230 IMMUNITY

Broadly speaking, CDA 230 "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F3d 1157, 1162 (9th Cir 2008). In *Zeran v. Am. Online, Inc.*, 129 F3d 327 (4th Cir 1997)—a seminal case interpreting CDA 230[3]—the court explained that the purpose of Congress in providing that immunity was as follows:

"Interactive computer services have millions of users. The amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to

---

[3] *See* Valerie C. Brannon & Erin N. Holmes, Cong. Research Serv., *Section 230: An Overview* (R46751) at 10 & n 90 (Apr 7, 2021) (noting that, "[s]ince its publication, other courts of appeals have largely adopted *Zeran*'s reasoning," and collecting cases), *available at* https://crsreports.congress.gov/product/pdf/R/R46751 (accessed Nov 5, 2021).

immunize service providers to avoid any such restrictive effect.

"Another important purpose of § 230 was to encourage service providers to self-regulate the dissemination of offensive material over their services."

*Id.* at 331 (internal citations omitted).

Reflecting those legislative concerns, courts have interpreted CDA 230 as providing two types of immunity. First, section 230(c)(1) "protects websites from liability for material posted on the website by someone else." *Doe v. Internet Brands, Inc.*, 824 F3d 846, 850 (9th Cir 2016). Second, section 230(c)(2) protects websites "from liability for claims arising out of the removal of potentially 'objectionable' material." *Batzel v. Smith*, 333 F3d 1018, 1030 n 14 (9th Cir 2003), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F3d 759, 766-67 (9th Cir 2017) (quoting 47 USC § 230(c)(2)). This case concerns the first type of immunity—*i.e.*, section 230(c)(1).

Pursuant to the text of CDA 230(c)(1), "No provider or user of an *interactive computer service* shall be treated as the publisher or speaker of any information provided by another *information content provider*." 47 USC § 230(c)(1) (emphases added). Two terms used in that statute are particularly important. An "interactive computer service" provider (service provider) is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 USC § 230(f)(2). Courts have considered platforms such as Google, Yahoo!, Facebook, and Craigslist to be service providers. Valerie C. Brannon & Erin N. Holmes, Cong. Research Serv., *Section 230: An Overview* (R46751) at 3 (Apr 7, 2021) (collecting cases). By contrast, an "information content provider" (content provider) is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 USC § 230(f)(3). Thus, CDA 230(c)(1) distinguishes between those who create content (content providers) and those who provide access to that content (service providers)—and, as discussed below, an entity can be both, depending on the circumstances.

Based on the text of CDA 230(c)(1), the Ninth Circuit has set forth—and numerous other federal and state courts have applied—a three-element test to determine whether a defendant is immunized: CDA 230(c)(1) provides immunity to "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F3d 1096, 1100-01 (9th Cir 2009); *see also, e.g., Jane Doe No. 1 v. Backpage.com, LLC*, 817 F3d 12, 19 (1st Cir 2016); *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F3d 158, 173 (2d Cir 2016); *Jones v. Dirty World Entm't Recordings LLC*, 755 F3d 398, 409 (6th Cir 2014); *F.T.C. v. Accusearch Inc.*, 570 F3d 1187, 1196 (10th Cir 2009); *Teatotaller, LLC v. Facebook, Inc.*, 173 NH 442, 450, 242 A3d 814 (2020); *Murphy v. Twitter, Inc.*, 60 Cal App 5th 12, 24, 274 Cal Rptr 3d 360 (Cal App Div 1, 2021); *Maynard v. Snapchat, Inc.*, 346 Ga App 131, 134, 816 SE2d 77 (Ga Ct App, 2018). Consequently, "section 230 provides immunity only if the interactive computer service does not create or develop the information [at issue] in whole or in part." *Roommates.Com*, 521 F3d at 1166 (brackets and internal quotation marks omitted).

In this case, plaintiff states, and we agree, that "Defendant Airbnb satisfies the first and third elements of the test." Plaintiff instead contests the second element, arguing that Airbnb's "curation of its site" goes "beyond the traditional functions of a publisher," because Airbnb was "creating or designing content," and therefore does not qualify for immunity under CDA 230. In other words, plaintiff contends that Airbnb's "curating" activities are so extensive that it is no longer a mere publisher (or service provider) but is also an unimmunized content provider.

As indicated above, there are circumstances where "[a] website operator can be both a service provider and a content provider." *Roommates.Com*, 521 F3d at 1162. But CDA 230(c)(1) immunity "applies only if the interactive computer service provider is not also an 'information content provider' *** who is 'responsible, in whole or in part, for the creation or development of' the offending content." *Id.* (quoting 47 USC § 230(f)(3)). Consequently, "[t]he prototypical

service qualifying for CDA immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F3d 1093, 1097 (9th Cir 2019), *cert den*, 140 S Ct 2761, 206 L Ed 2d 936 (2020) (brackets and internal quotation marks omitted). "Immunity is not foreclosed," however, "simply because a website offers more than a 'bulletin board' service, or an online site on which Internet subscribers post comments and respond to comments posted by others." *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F Supp 3d 1097, 1104 (CD Cal 2017) (internal quotation marks omitted).

Indeed, courts have repeatedly indicated that a service provider does not become a content provider, thereby losing immunity, "merely [by] augmenting the content" at issue. *Roommates.Com*, 521 F3d at 1167-68; *see also Zeran*, 129 F3d at 330 (An entity's "exercise of a publisher's traditional editorial functions" such as "alter[ing] content" does not foreclose CDA 230 immunity.); *Batzel*, 333 F3d at 1031 (To "develop information" requires "something more substantial than merely editing portions of an e-mail."); *Carafano v. Metrosplash.com, Inc.*, 339 F3d 1119, 1124 (9th Cir 2003) ("[T]he fact that Matchmaker classifies user characteristics into discrete categories *** does not transform Matchmaker into a developer of the underlying information."); *Dart v. Craigslist, Inc.*, 665 F Supp 2d 961, 968 (ND Ill 2009) (rejecting plaintiff's argument that Craigslist "plays a more active role than an intermediary or a traditional publisher" by providing "an 'adult services' category" on its website). Courts have also repeatedly held that "a website is not transformed into a content creator or developer by virtue of supplying 'neutral tools' that deliver content in response to user inputs." *Gonzalez v. Google LLC*, 2 F4th 871, 893 (9th Cir 2021); *see also, e.g.*, *Dyroff*, 934 F3d at 1096 (Website's "functions, including recommendations and notifications, were content-neutral tools used to facilitate communications."); *Kimzey v. Yelp! Inc.*, 836 F3d 1263, 1270 (9th Cir 2016) (Yelp!'s "star-rating system is best characterized as [a] kind of 'neutral tool' operating on voluntary [user] inputs."); *Dart*, 665 F Supp 2d at 969 (Craigslist's "word-search function is a 'neutral tool.'").

Thus, service providers may retain CDA 230 immunity even when they have "augmented" user content to some extent. The question relevant to us, then, is: When is a service provider also an unimmunized content provider?

The Ninth Circuit and others have answered that question: A service provider "helps to develop unlawful content, and thus falls [outside the protection of] section 230, if it *contributes materially* to the alleged illegality of the conduct" at issue. *Roomates.Com*, 521 F3d at 1168 (emphasis added); *see also Gonzalez*, 2 F4th at 892 (noting that "[o]ther circuits have adopted this 'material contribution' test," and collecting cases). The court in *Roomates.Com* explained that "material contribution" test, in part, by way of examples. For instance, the court explained,

> "A dating website that requires users to enter their sex, race, religion and marital status through drop-down menus, and that provides means for users to search along the same lines, retains its CDA immunity insofar as it does not contribute to any alleged illegality; this immunity is retained even if the website is sued for libel based on these characteristics because the website would not have contributed materially to any alleged defamation. Similarly, a housing website that allows users to specify whether they will or will not receive emails by means of *user-defined* criteria might help some users exclude email from other users of a particular race or sex. However, that website would be immune, so long as it does not require the use of discriminatory criteria. A website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality. However, a website operator who edits in a manner that contributes to the alleged illegality—such as by removing the word 'not' from a user's message reading '[Name] did not steal the artwork' in order to transform an innocent message into a libelous one—is directly involved in the alleged illegality and thus not immune."

521 F3d at 1169 (emphasis in original).

With that framework in mind, we next determine whether Airbnb's activities identified by plaintiff materially

contributed to the alleged illegality of the content at issue—*i.e.*, Dennis's indication in his Airbnb listing that the Old Barn had a hot tub, with no accompanying warning about hot tub safety.

## ANALYSIS

Here, we conclude that Airbnb's activities did not materially contribute to the alleged unlawfulness of Dennis's listing. To reiterate, the activities identified by plaintiff include "creating a special search category for hot tubs" and "highlighting" those listings; "adding icons" to rental listings with hot tubs; asking "targeted questions" and "encourage[ing] individuals to specify whether their property has a hot tub, which is displayed in the listing"; and allowing individuals listing their property to "choos[e] answers from drop-down menus."

Airbnb's provision of a "special search category" allowing users to search for and obtain results based on user-provided information about hot tubs does not make Airbnb a content provider or developer. Merely providing that search tool did not augment—much less, materially contribute to—Dennis's indication that the Old Barn had a hot tub. Moreover, the search function was simply a neutral tool that provided listings of properties with hot tubs to Airbnb users in response to their queries. *See Dart*, 665 F Supp 2d at 969 ("The word-search function is a 'neutral tool.'"); *Gonzalez*, 2 F4th at 893 ("A website is not transformed into a content creator or developer by virtue of supplying 'neutral tools' that deliver content in response to user inputs."); *La Park La Brea A LLC*, 285 F Supp 3d at 1104 (Airbnb's "auto-complete search function" does "not make Airbnb an information content provider."); *cf. Carafano*, 339 F3d at 1124 ("[T]he fact that Matchmaker classifies user characteristics into discrete categories," allowing "highly structured searches," did "not transform Matchmaker into a developer of the underlying misinformation.").

Likewise, by "highlighting" the user-created listings that mention hot tubs—including Dennis's Old Barn listing—Airbnb did not materially contribute to any portion of the hot tub information contained in Dennis's listing and, thus, did not become a content provider. *See Dowbenko v.*

*Google Inc.*, 582 Fed Appx 801, 805 (11th Cir 2014) (rejecting argument that Google was transformed into a content provider when it "manipulated its search results to prominently feature the article at issue"); *Ascentive, LLC v. Op. Corp.*, 842 F Supp 2d 450, 476 (EDNY 2011) ("The fact that the defendants *** alter the way [users'] postings are displayed" and caused content to "appear higher in search engine results list *** do[es] not render [defendant] an information content provider."); *cf. Dyroff*, 934 F3d at 1096 (The defendant's website "is immune from liability under CDA because its functions, including recommendations and notifications, were content-neutral tools used to facilitate communications.").

Plaintiff also contends that Airbnb is not immune under CDA 230, because it "asks targeted questions" and "encourages individuals to specify whether their property has a hot tub." But "requiring prospective hosts to include specific information about the property and themselves" does "not make Airbnb an information content provider." *La Park La Brea A LLC*, 285 F Supp 3d at 1104; *see also Roommates. Com*, 521 F3d at 1174 ("The fact that Roommate encourages subscribers to provide something in response to the prompt is not enough to make it a developer of the information[.]" (Brackets and internal quotation marks omitted.)).

As for plaintiff's contention about Airbnb "adding icons" to listings that indicate the presence of hot tubs, similar icons have repeatedly been characterized by courts as neutral tools that merely represent, in graphic form, the information provided to a website like Airbnb by third-party users like Dennis. *See, e.g.*, *Kimzey*, 836 F3d at 1270 ("[S]tar rating" accompanying a user's review was a "neutral tool" and did not transform Yelp! into a content provider, because it was "based on rating inputs from third parties" and "user-generated" data.); *Marshall's Locksmith Service Inc. v. Google, LLC*, 925 F3d 1263, 1270-71 (DDC 2019) (rejecting argument that "translation" and "display" of user-provided information in "pictorial form"—*i.e.*, "map pinpoints"—transformed Google into a content provider); *Gentry v. eBay, Inc.*, 99 Cal App 4th 816, 833, 121 Cal Rptr 2d 703 (Cal App Ct Div 1, 2002) (Adding "a color-coded star symbol" next to user's name did not "transform[] eBay into

an information content provider," because it was "simply a representation of the amount of such positive information received by other users of eBay's web site."). Accordingly, Airbnb was not transformed into a content provider by representing the information it received from Dennis in icon form.

Finally, plaintiff contends that Airbnb helped develop the content at issue, because Airbnb allowed Dennis to indicate the Old Barn's amenities—including the hot tub—by "choosing answers from drop-down menus." As support for that contention, plaintiff argues that "[t]he court in *Roommates.Com*[, 521 F3d 1157 (9th Cir 2008)] addressed this issue directly" and "found that, even on websites where the users are the primary content providers, the [service provider] can also be an information content provider if it helps 'develop' at least 'in part' the information posted."

Plaintiff is correct that the Roommates.Com case involved users providing information to the defendant's website by selecting from "a limited set of pre-populated answers" in a "drop-down menu" furnished by the defendant's website. 521 F3d at 1165-66. However, the court's holding in that case was not based merely on the provision and use of drop-down menus.

In *Roommates.Com*, housing agencies in California sued the operators of the website Roommates.Com—a website that allows individuals to locate prospective roommates. *Id.* at 1161-62. New Roommates.Com users were required to complete a questionnaire that included the user's preferences for a roommate's age, gender, sexual orientation, and number of children. *Id.* at 1161. Roommates.Com would then display the user's answers on their website for other users to search and view. *Id.* The housing agencies alleged that Roommates.Com had violated the Fair Housing Act (FHA) by publishing advertisements for housing that indicate preferences based on age, sex, family status, and other protected characteristics. *Id.* at 1162. In its defense, Roommates.Com argued that the housing agencies sought to hold Roommates.Com accountable for content provided by third parties, and therefore, it was immune under CDA 230. *Id.*

Ultimately, the court determined that the website "does much more than provide options" for inputting information. *Id.* at 1166. Rather, the court reasoned, "[b]y requiring subscribers to provide the information as a condition of accessing its service, and by providing a limited set of pre-populated answers, Roommate becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information." *Id.* The court further reasoned that Roommates.Com "directly participates in developing the alleged illegality," because their "website is designed to force subscribers to divulge protected characteristics and discriminatory preferences, and to match those who have rooms with those who are looking for rooms based on criteria that appear to be prohibited by the FHA." *Id.* at 1172-74. Thus, it was Roommates.Com's role as a provider, "at least in part," of the content at issue, along with the forced production and utilization of protected-class information for unlawful purposes, that stripped Roommates.Com of CDA 230's protections; it was not the mere use of "drop-down menus" and "pre-populated answers" that foreclosed immunity. *See id.* at 1169 & n 23 ("A dating website that requires users to enter their sex, race, religion, and marital status through drop-down menus, and that provides means for users to search along the same lines, retains its CDA immunity" because it "is perfectly legal to discriminate along those lines in dating.").

In this case, Airbnb's use of drop-down menus did not, as plaintiff suggests, foreclose its immunity under the holding in *Roommates.Com*. Unlike that case, Airbnb did not *require* Dennis to provide any information through Airbnb's drop-down menu; instead, Dennis could—and did—provide information, in his own words, separately in the paragraph describing the Old Barn. And, though Dennis also provided information about his hot tub through Airbnb's drop-down menu, he did so voluntarily. In addition, the information that Airbnb did ask about in the drop-down menu pertained only to the Old Barn's amenities—information that, by itself, was not used by Airbnb for a prohibited purpose like the protected-class information at issue in *Roommates. Com*. Thus, unlike the website in *Roommates.Com*, Airbnb

did not "materially contribute" to Dennis's indication that the Old Barn had a hot tub by giving Dennis the option to input that information through a drop-down menu. *See Roommates.Com*, 521 F3d at 1168-75 (explaining and applying the "material contribution" test).

In sum, Airbnb's activities did not, in this case, transform it into a content provider, thereby foreclosing immunity under CDA 230. We therefore conclude that the trial court did not err in granting Airbnb's motion for summary judgment; accordingly, we affirm.

Affirmed.