**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

JANE DOE NO. 14,
       *Plaintiff-Appellant*,

v.

INTERNET BRANDS, INC.,
DBA Modelmayhem.com,
       *Defendant-Appellee.*

</td>
<td>

No. 12-56638

D.C. No.
2:12-cv-03626-JFW-PJW

ORDER AND OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted February 7, 2014
Opinion withdrawn February 24, 2015
Re-argued and Submitted April 8, 2015
Pasadena, California

Filed May 31, 2016

Before: Mary M. Schroeder and Richard R. Clifton, Circuit
Judges, and Brian M. Cogan, District Judge.[*]

Opinion by Judge Clifton

---

[*] The Honorable Brian M. Cogan, District Judge for the U.S. District
Court for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Communications Decency Act

The panel withdrew the opinion filed on September 17, 2014, and in a superseding opinion reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal, as barred by the Communications Decency Act, of an action against Internet Brands, Inc. alleging liability for negligence under California law based on a failure to warn; and remanded for further proceedings.

Section 230(c) of the Communications Decency Act provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."

Plaintiff Jane Doe sought to hold Internet Brands liable for failing to warn her about information it obtained from an outside source about how third parties targeted and lured victims through Internet Brand's website modelmayhem.com, a networking website for people in the modeling industry.

The panel held that the Communications Decency Act did not bar Jane Doe's failure to warn claim under California law. The panel concluded that Jane Doe's negligent failure to warn claim did not seek to hold Internet Brands liable as the "publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and therefore the Communications Decency Act did not bar the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

claim. The panel expressed no opinion on the viability of the failure to warn allegations on the merits.

## COUNSEL

Jeffrey Herman (argued) and Stuart S. Mermelstein, Herman Law, Boca Raton, Florida, for Plaintiff-Appellant.

Daniel P. Collins (argued), Munger, Tolles & Olson LLP, Los Angeles, California; Jonathan H. Blavin, Munger, Tolles & Olson LLP, San Francisco, California; Wendy E. Giberti, iGeneral Counsel, P.C., Beverly Hills, California; Patrick Fraioli, Ervin Cohen & Jessup LLP, Beverly Hills, California, for Defendant-Appellee.

Patrick J. Carome (argued), Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Felicia H. Ellsworth and Brook Hopkins, Wilmer Cutler Pickering Hale and Dorr, Boston, Massachusetts, for Amici Curiae The Computer and Communications Industry Association; The Internet Association; Care.com, Inc.; Craigslist, Inc.; Facebook, Inc.; IAC/Interactivecorp; and Tumblr, Inc.

## ORDER

By order entered February 24, 2015, Defendant-Appellee Internet Brands Inc.'s Petition for Rehearing, filed October 31, 2014, was granted, the Petition for Rehearing En Banc was denied as moot, the opinion filed on September 17, 2014 was withdrawn, and the case scheduled for a new oral argument.

An opinion is filed together with this order. Subsequent petitions for rehearing or rehearing en banc may be filed.

**OPINION**

CLIFTON, Circuit Judge:

Model Mayhem is a networking website, found at modelmayhem.com, for people in the modeling industry. Plaintiff Jane Doe, an aspiring model who posted information about herself on the website, alleges that two rapists used the website to lure her to a fake audition, where they drugged her, raped her, and recorded her for a pornographic video. She also alleges that Defendant Internet Brands, the company that owns the website, knew about the rapists but did not warn her or the website's other users. She filed an action against Internet Brands alleging liability for negligence under California law based on that failure to warn.

The district court dismissed the action on the ground that her claim was barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c) (2012). We conclude that the CDA does not bar the claim. We reverse and remand for further proceedings.

**I. Background**

At the motion to dismiss stage, we assume factual allegations stated in the Complaint filed by Plaintiff to be

true.[1] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiff alleges that Internet Brands owns and operates the website modelmayhem.com, which it purchased in 2008. Model Mayhem is a networking site for professional and aspiring models to market their services. It has over 600,000 members. Plaintiff Jane Doe, a fictitious name, was an aspiring model who became a member of Model Mayhem.

Unbeknownst to Jane Doe, two persons, Lavont Flanders and Emerson Callum, were using Model Mayhem to identify targets for a rape scheme, allegedly as early as 2006. Flanders and Callum are not alleged to have posted their own profiles on the website. Instead, they browsed profiles on Model Mayhem posted by models, contacted potential victims with fake identities posing as talent scouts, and lured the victims to south Florida for modeling auditions. Once a victim arrived, Flanders and Callum used a date rape drug to put her in a semi-catatonic state, raped her, and recorded the activity on videotape for sale and distribution as pornography.

In 2008, Internet Brands purchased Model Mayhem from Donald and Taylor Waitts, the original developers of the site. Shortly after the purchase, Internet Brands learned of how Flanders and Callum were using the website. It is not alleged precisely how Internet Brands obtained that information, but it is alleged that the company "as early as August, 2010, knew that two individuals, Lavont Flanders and Emerson Callum, had been criminally charged in this scheme, and further knew from the criminal charges, the particular details

---

[1] Given the serious nature of the allegations, we note that Internet Brands has specifically denied substantially all of the allegations, including that the assailants contacted Plaintiff through the website.

of the scheme, including how MODELMAYHEM.COM had been used in the scheme and its members victimized." Specifically, it is alleged that Internet Brands knew that:

> a.     Lavont Flanders and Emerson Callum would contact female MODELMAYHEM.COM members, using fake identities, disguised as talent scouts.
>
> b.   Lavont Flanders and Emerson Callum would lure female MODELMAYHEM.COM members to South Florida to participate in fake auditions for a fraudulent modeling contract opportunity.
>
> c.     Lavont Flanders and Emerson Callum would drug the female MODELMAYHEM.COM members with a date-rape drug during the fake audition.
>
> d.   Emerson Callum would then rape the unknowingly drugged women.
>
> e.   Lavont Flanders and Emerson Callum would record the rape on video camera.
>
> f.   Lavont Flanders and Emerson Callum would produce the rape videos and distribute the video on the internet, guised as consensual hardcore pornography.

It is also alleged that Internet Brands sued the Waitts in August 2010 for failing to disclose the potential for civil suits arising from the activities of Flanders and Callum.

The reference to criminal charges suggests that the information was obtained by Internet Brands from an outside source, not from monitoring postings on the Model Mayhem website. As noted above, Flanders and Callum did not post on the website.

In February 2011, several months after Internet Brands had learned about the criminal activity, Flanders, pretending to be a talent scout and using a false identity, contacted Jane Doe, in the words of the Complaint, "through" the Model Mayhem website.[2] Jane Doe went to south Florida for a purported audition, where Flanders and Callum drugged, raped, and recorded her.

Jane Doe filed this diversity action against Internet Brands in the Central District of California, where Internet Brands is based, asserting one count of negligent failure to warn under California law. She alleges that Internet Brands knew about the activities of Flanders and Callum but failed to warn Model Mayhem users that they were at risk of being victimized. She further alleges that this failure to warn caused her to be a victim of the rape scheme.

Internet Brands filed a motion to dismiss the action under Federal Rule of Civil Procedure 12(b)(6), on the ground that her claim was barred by the CDA. The district court granted the motion to dismiss and dismissed the action with prejudice. It denied leave to amend the complaint on the

---

[2] Internet Brands has contended that Jane Doe was contacted directly by her assailants, not through the website. At oral argument, counsel for Jane Doe may have agreed that the contact was outside the website. This distinction does not affect our conclusion.

ground that any amendment would be futile. Jane Doe appeals.

## II. Discussion

We review de novo a district court's decision to grant a motion to dismiss. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004). We also review de novo questions of statutory interpretation. *United States v. Harvey*, 659 F.3d 1272, 1274 (9th Cir. 2011).

California law imposes a duty to warn a potential victim of third-party harm when a person has a "special relationship to either the person whose conduct needs to be controlled or . . . to the foreseeable victim of that conduct." *Tarasoff v. Regents of Univ. of California*, 17 Cal.3d 425, 435 (1976), *superseded by statute*, Cal. Civ. Code § 43.92. Jane Doe alleges that Internet Brands had a cognizable "special relationship" with her and that its failure to warn her of Flanders and Callum's rape scheme caused her to fall victim to it. Internet Brands argues that the CDA precludes the claim. Although we assume that Internet Brands may contest the scope of the duty to warn under California law and, in particular, the existence of the required special relationship, that issue is not before us. The dismissal of the action by the district court was based entirely on the CDA.

The question before us, therefore, is whether the CDA bars Jane Doe's negligent failure to warn claim under California law. We begin with the language of the statute. *Campbell v. Allied Van Lines Inc.*, 410 F.3d 618, 620 (9th Cir. 2005).

Section 230(c) of the CDA, is titled "Protection for 'Good Samaritan' blocking and screening of offensive material." It provides two types of protection from civil liability, but only the first type is relevant to this case:

> (1) Treatment of publisher or speaker
>
> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

The preemptive effect of this subsection is express: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." Section 230(e)(3).

Separated into its elements, subsection (c)(1) precludes liability for "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009) (footnote omitted). Thus, section 230(c)(1) precludes liability that treats a website as the publisher or speaker of information users provide on the website. In general, this section protects websites from liability for material posted on the website by someone else.

The first element is satisfied in this case because Internet Brands is a provider of an interactive computer service as that

term is defined in section 230(f)(2).**[3]** The essential question, then, is whether Plaintiff's failure to warn cause of action "inherently requires the court to treat" Internet Brands "as a publisher or speaker" "of information provided by another information content provider." *Barnes*, 570 F.3d at 1100–02. Put differently, the case turns on whether it would be inconsistent with section 230(c)(1) for the State of California to require an interactive computer service provider to warn its users about the threat of a known sexual predator.

A clear illustration of a cause of action that treats a website proprietor as a publisher is a defamation action founded on the hosting of defamatory third-party content. *See, e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003). In such circumstances, the protections of section 230(c)(1) apply, and they continue to apply even if the website proprietor has not acted to remove offensive content posted by others. For example, this court has held that the CDA barred a negligent undertaking claim against a website that failed to remove an offensive profile posted on the website by the victim's ex-boyfriend. *Barnes*, 570 F.3d at 1101–03. Such liability, the court explained, would "treat" the website as the "publisher" of user content because "removing content is something publishers do" and to permit liability for such conduct "necessarily involves treating the liable party as a publisher of the content it failed to remove." *Id.* at 1103.

---

**[3]** "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." Section 230(f)(2).

Jane Doe's claim is different, however. She does not seek to hold Internet Brands liable as a "publisher or speaker" of content someone posted on the Model Mayhem website, or for Internet Brands' failure to remove content posted on the website. Jane Doe herself posted her profile, but she does not seek to hold Internet Brands liable for its content. Nor does she allege that Flanders and Callum posted anything to the website. The Complaint alleges only that "JANE DOE was contacted by Lavont Flanders through MODELMAYHEM.COM using a fake identity." Jane Doe does not claim to have been lured by any posting that Internet Brands failed to remove. Internet Brands is also not alleged to have learned of the predators' activity from any monitoring of postings on the website, nor is its failure to monitor postings at issue.

Instead, Jane Doe attempts to hold Internet Brands liable for failing to warn her about information it obtained from an outside source about how third parties targeted and lured victims through Model Mayhem. The duty to warn allegedly imposed by California law would not require Internet Brands to remove any user content or otherwise affect how it publishes or monitors such content.

Any alleged obligation to warn could have been satisfied without changes to the content posted by the website's users and without conducting a detailed investigation. Internet Brands could have given a warning to Model Mayhem users, perhaps by posting a notice on the website or by informing users by email what it knew about the activities of Flanders and Callum. Posting or emailing such a warning could be deemed an act of publishing information, but section 230(c)(1) bars only liability that treats a website as a publisher or speaker of content provided by somebody else:

in the words of the statute, "information provided by another information content provider." 47 U.S.C. § 230(c)(1). A post or email warning that Internet Brands generated would involve only content that Internet Brands itself produced. Therefore, an alleged tort based on a duty that would require such a self-produced warning falls outside of section 230(c)(1).

In sum, Jane Doe's negligent failure to warn claim does not seek to hold Internet Brands liable as the "publisher or speaker of any information provided by another information content provider." *Id*. As a result, we conclude that the CDA does not bar this claim.

The core policy of section 230(c)(1) supports this conclusion. As the heading to section 230(c) indicates, the purpose of that section is to provide "[p]rotection for 'Good Samaritan' blocking and screening of offensive material." That means a website should be able to act as a "Good Samaritan" to self-regulate offensive third party content without fear of liability. In particular, section 230 was in part a reaction to *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) (unpublished), a New York state court decision holding that an internet service provider became a "publisher" of offensive content on its message boards because it deleted some offensive posts but not others. *Id.* at \*4. Under *Stratton Oakmont*'s reasoning, a website had to choose between voluntarily removing some offensive third party content, which would expose the site to liability for the content it did not remove, or filtering nothing, which would prevent liability for all third party content. *See id.* "In passing section 230, Congress sought to spare interactive computer services this grim choice by allowing them to perform some editing on

user-generated content without thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't edit or delete." *Fair Housing Council v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (en banc) (hereafter *Roommates.Com*). Simply put, the immunity provision was "enacted to protect websites against the evil of liability for failure to remove offensive content." *Id*. at 1174.

Jane Doe's failure to warn claim has nothing to do with Internet Brands' efforts, or lack thereof, to edit, monitor, or remove user generated content. Plaintiff's theory is that Internet Brands should be held liable, based on its knowledge of the rape scheme and its "special relationship" with users like Jane Doe, for failing to generate its own warning. Thus, liability would not discourage the core policy of section 230(c), "Good Samaritan" filtering of third party content.

Another policy of section 230 is to "avoid the chilling effect upon Internet free speech that would be occasioned by the imposition of tort liability upon companies that do not create potentially harmful messages but are simply intermediaries for their delivery." *Delfino v. Agilent Techs., Inc.*, 52 Cal. Rptr. 3d 376, 387 (Ct. App. 2006). As section 230(b) itself explains, "[i]t is the policy of the United States . . . to promote the continued development of the Internet . . . [and] to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." Jane Doe's cause of action does not seek to impose "intermediary" liability. Although Internet Brands may have been an "intermediary" between Jane Doe and the rapists in a broad sense, there is no allegation that Model Mayhem transmitted any potentially harmful messages between Jane

Doe and Flanders or Callum. There is also no allegation that Flanders or Callum posted their own profiles on the website. That Internet Brands was in some sense an "intermediary" between Jane Doe and the rapists simply does not mean that the failure to warn claim treats Internet Brands as the publisher or speaker of user content. That Internet Brands was in some sense an "intermediary" between Jane Doe and the rapists simply does not mean that the failure to warn claim treats Internet Brands as the publisher or speaker of user content.

It may be true that imposing any tort liability on Internet Brands for its role as an interactive computer service could be said to have a "chilling effect" on the internet, if only because such liability would make operating an internet business marginally more expensive. But such a broad policy argument does not persuade us that the CDA should bar the failure to warn claim. We have already held that the CDA does not declare "a general immunity from liability deriving from third-party content." *Barnes*, 570 F.3d at 1100. "[T]he Communications Decency Act was not meant to create a lawless no-man's-land on the Internet." *Roommates.Com*, 521 F.3d at 1164. Congress has not provided an all purpose get-out-of-jail-free card for businesses that publish user content on the internet, though any claims might have a marginal chilling effect on internet publishing businesses. Moreover, the argument that our holding will have a chilling effect presupposes that Jane Doe has alleged a viable failure to warn claim under California law. That question is not before us and remains to be answered.

Barring Jane Doe's failure to warn claim would stretch the CDA beyond its narrow language and its purpose. To be sure, Internet Brands acted as the "publisher or speaker" of

user content by hosting Jane Doe's user profile on the Model Mayhem website, and that action could be described as a "but-for" cause of her injuries. Without it, Flanders and Callum would not have identified her and been able to lure her to their trap. But that does not mean the failure to warn claim seeks to hold Internet Brands liable as the "publisher or speaker" of user content.

Publishing activity is a but-for cause of just about everything Model Mayhem is involved in. It is an internet publishing business. Without publishing user content, it would not exist. As noted above, however, we held in *Barnes* that the CDA does not provide a general immunity against all claims derived from third-party content. In that case we affirmed the dismissal of a claim for negligent undertaking as barred under the CDA, as discussed above at 10, but we reversed the dismissal of a claim for promissory estoppel under Oregon law. The publication of the offensive profile posted by the plaintiff's former boyfriend was a "but-for" cause there, as well, because without that posting the plaintiff would not have suffered any injury. But that did not mean that the CDA immunized the proprietor of the website from all potential liability. As we observed in *Roommates.Com*, "we must be careful not to exceed the scope of the immunity provided by Congress." 521 F.3d at 1164 n.15. Congress could have written the statute more broadly, but it did not.

The parties discuss other court decisions regarding the CDA in their briefs. The case law provides no close analogies, though, because the cases are all distinguishable in critical respects. For example, the purported tort duty does not arise from allegations about mishandling the removal of third party content. *Barnes*, 570 F.3d at 1105–06 (holding that the CDA bars negligent undertaking claim arising from

Yahoo's failure to take reasonable care in removing offensive profiles). Nor is there a contractual duty arising from a promise distinct from tort duty arising from publishing conduct. *Id.* at 1108–09 (holding that the CDA does not bar a promissory estoppel claim).

The tort duty asserted here does not arise from an alleged failure to adequately regulate access to user content or to monitor internal communications that might send up red flags about sexual predators. *Doe II v. MySpace, Inc.*, 175 Cal.App.4th 561, 573 (Ct. App. 2009) (holding that the CDA bars tort claims based on a duty to restrict access to minors' MySpace profiles); *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) (holding that CDA bars claims for negligence and gross negligence in not preventing a 13 year old girl from lying about her age to create a personal profile that led to contact by a sexual predator). Jane Doe alleges actual knowledge by Internet Brands from an outside source of information about criminal activity.

This case does not concern an employer-employee relationship giving rise to a negligent supervision claim. *Lansing v. Southwest Airlines Co.*, 980 N.E.2d 630, 639–41 (Ill. Ct. App. 2012) (holding that the CDA does not bar a negligent supervision claim against an airline whose employee used the company email and text messaging systems to harass the plaintiff).

In short, this case presents the novel issue of whether the CDA bars Jane Doe's failure to warn claim under California law. We conclude that it does not.

## III.    Conclusion

The CDA does not bar Jane Doe's failure to warn claim. We express no opinion on the viability of the failure to warn allegations on the merits. We hold only that the CDA is not a valid basis to dismiss Jane Doe's complaint. Accordingly, we reverse and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED**.