Opinion by Judge SCHROEDER; Dissent by Judge O’SCANNLAIN; Dissent by Judge GOULD.
OPINION
SCHROEDER, Circuit Judge:
In Hollywood, writers commonly submit copyrighted scripts to producers with the understanding that if the script is used, the producer must compensate the writer for the use of the copyrighted material. But what happens when the producer uses the idea or concept embodied in the script, but doesn’t pay? The Supreme Court of California, in 1956, answered this question by recognizing an implied contractual right to compensation when a writer submits material to a producer with the understanding that the writer will be paid if the producer uses the concept. Desny v. Wilder, 46 Cal.2d 715, 299 P.2d 257 (1956).
A so-called “Desny claim” has remained viable under California law for over fifty years. See Gunther-Wahl Productions, Inc. v. Mattel, Inc., 104 Cal.App.4th 27, 128 Cal.Rptr.2d 50 (2002). This court applied that California law in Grosso v. Miramax Film Corp., 383 F.3d 965 (9th Cir. 2004), amended 400 F.3d 658 (9th Cir. 2005), cert. denied 546 U.S. 824, 126 S.Ct. 361, 163 L.Ed.2d 68 (2005), where we held that such an implied contractual claim is not preempted by federal copyright law. We explained that the contractual claim requires that there be an expectation on both sides that use of the idea requires compensation, and that such bilateral understanding of payment constitutes an additional element that transforms a claim from one asserting a right exclusively protected by federal copyright law, to a contractual claim that is not preempted by copyright law. Grosso has firm roots in our federal law as well as in the California law. Earlier, we recognized that a claim for unjust enrichment is essentially equivalent to a claim of copyright infringement and is therefore preempted. See Del Madera Props. v. Rhodes & Gardner, Inc., *977 820 F.2d 973, 977 (9th Cir.1987), overruled on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Yet we had also recognized a claim for breach of contract that was not preempted where the plaintiff establishes he had a reasonable expectation of payment for use. Landsberg v. Scrabble Crossword Game Players, Inc., 802 F.2d 1193, 1196-97 (9th Cir.1986).
We recently followed Grosso in Benay v. Warner Bros. Entm’t, Inc., 607 F.3d 620 (9th Cir.2010), and held a contractual claim was not preempted. We said that “[cjontraet law, whether through express or implied-in-fact contracts, is the most significant remaining state-law protection for literary or artistic ideas.” Id. at 629. The three judge panel in this case, however, found a similar claim preempted.
We again hold that copyright law does not preempt a contract claim where plaintiff alleges a bilateral expectation that he would be compensated for use of the idea, the essential element of a Desny claim that separates it from preempted claims for the use of copyrighted material. We see no meaningful difference between the conditioning of use on payment in Grosso and conditioning use in this case on the granting of a partnership interest in the proceeds of the production. Montz, as did the plaintiffs in Desny and Grosso, has alleged he revealed his concept to defendants reasonably expecting to be compensated, if his concept was used. We conclude that the district court’s judgment dismissing the contractual claim as preempted must be reversed.
Plaintiffs’ complaint also alleged a claim under California law for breach of confidence. The district court dismissed it as preempted, as well, and the panel affirmed. We also reverse the judgment dismissing that claim and remand both for further proceedings.
I. Factual Background
In 1981, Plaintiff Larry Montz, a parapsychologist, conceived of an idea for a television show that would follow a team of paranormal investigators conducting field investigations. As envisioned, each episode would follow the team to different real-world locations, where they would use magnetometers, infrared cameras, and other devices to investigate reports of paranormal activity. According to the complaint, from 1996 to 2003, Montz and Plaintiff Daena Smoller, a publicist and a producer, pitched Montz’s idea to television studios, producers, and their representatives, including representatives of NBC and the Sci-Fi channel. A number of meetings and discussions took place, and Montz and Smoller presented screenplays, videos, and other materials relating to their proposed show. Ultimately, the studios indicated that they were not interested.
Three years later, in November 2006, Montz and Smoller filed a complaint against Pilgrim Films & Television, Inc., NBC Universal Inc., Craig Piligian, Jason Conrad Hawes, and ten unknown defendants in federal district court, alleging copyright infringement, breach of implied contract, breach of confidence, and several other causes of action. According to the complaint, after the meetings with Montz and Smoller, NBC partnered with Piligian and Pilgrim to produce a series on the SciFi Channel based on the plaintiffs’ materials. The show, called Ghost Hunters, starred Hawes as the leader of a team of investigators who travel across the country to study paranormal activity.
Plaintiffs’ complaint specifically alleged that defendants breached an implied-in-fact contract. The complaint described the terms of the agreement:
Plaintiffs communicated their ideas and creative concepts for the “Ghost Hunt *978 ers” Concept to the Defendants, pursuant to the standard custom and practice in the industry with respect to the exchange of creative ideas, under the following terms:
a. that Plaintiffs’ disclosure of their ideas and concepts was strictly confidential;
b. that the Defendants would not disclose, divulge or exploit the Plaintiffs’ ideas and concepts without compensation and without obtaining the Plaintiffs’ consent; and
c. that, by accepting the Plaintiffs’ disclosure of its concept, the Defendants accepted and agreed to abide by the foregoing terms.
Compl. at ¶ 46. The complaint further alleged that plaintiffs presented the concept on the express condition that they made the presentation as an offer to partner with the defendants and that plaintiffs justifiably expected to receive a share of the profits derived from any use of the idea:
The Plaintiffs presented their ideas for the “Ghost Hunter” Concept to the Defendants’ [sic] in confidence, pursuant to the custom and practice of the entertainment industry, for the express purpose of offering to partner with the Defendants in the production, broadcast and distribution of the Concept. Accordingly, the Plaintiffs justifiably expected to receive a share of any profits and credit that might be derived from the exploitation of its ideas and concepts for the Concept.
Id. at ¶ 47. The dissent appears to overlook these clear allegations that compensation was expected in accord with industry practice.
Plaintiffs also alleged that defendants breached their confidential relationship “by taking Plaintiffs’ novel ideas and concepts, exploiting those ideas and concepts, and profiting therefrom to the Plaintiffs’ exclusion....” Id. at ¶ 59. The complaint therefore alleged a claim under California law of breach of confidence.
II. Procedural Background
Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The district court granted in part and denied in part the defendants’ motion. The court concluded that the complaint alleged facts sufficient to state a federal copyright claim, but that federal copyright law preempted the plaintiffs’ state-law claims. The court dismissed the state-law claims with prejudice and without leave to amend.
Plaintiffs amended their copyright claim and added Universal Television Networks as a defendant. Subsequently, the parties stipulated to the voluntary dismissal of the amended copyright claim with prejudice. With no remaining claims to be adjudicated, the district court entered final judgment in favor of the defendants. The plaintiffs timely appealed the dismissal of their breach of implied contract and breach of confidence claims.
On June 3, 2010, the three-judge panel affirmed, holding both claims preempted by federal copyright law. Montz v. Pilgrim Films & Television, Inc., 606 F.3d 1153, 1158 (9th Cir.2010). We ordered a rehearing of this case en banc pursuant to a vote of the majority of active judges. See 28 U.S.C. § 46(c) and Fed. R.App. P. 35.
III. California Implied-in-Fact Contract Law
Writers in the Hollywood film industry often submit scripts to producers, or set up meetings with them, in the hope of selling them scripts and concepts for movies. The practice has carried over into television. Since the writer is looking for *979 someone to turn the written work into an entertainment production, writers often pitch scripts or concepts to producers with the understanding that the writer will be paid if the material is used. Since an idea cannot be copyrighted, a concept for a film or television show cannot be protected by a copyright. 17 U.S.C. § 102. But the concept can still be stolen if the studio violates an implied contract to pay the writer for using it.
In Desny, the California Supreme Court recognized that a writer and producer form an implied contract under circumstances where both understand that the writer is disclosing his idea on the condition that he will be compensated if it is used. 299 P.2d at 270. There, defendant Billy Wilder, famed director of Sunset Boulevard and Witness for the Prosecution, allegedly entered into an implied contractual arrangement that was initiated when the plaintiff telephoned Wilder’s office and pitched a movie idea to Wilder’s secretary who, along with Wilder, understood Wilder was to pay if he used the story. Id. at 273-74. Wilder produced a film, Ace in the Hole, allegedly based on the idea plaintiff had pitched for a movie inspired by the “life story of Floyd Collins who was trapped [in a cave] and made sensational news for two weeks.” Id. at 262. Wilder allegedly failed to compensate the plaintiff, and the California Supreme Court held that, given the entertainment industry norms, the plaintiff had sufficiently pled the breach of an implied contract to pay for use of his idea. The issue here is whether copyright law now preempts such claims.
IV. Copyright Preemption
The Copyright Act of 1976 expressly preempts state claims where the plaintiffs work “comefs] within the subject matter of copyright” and the state law grants “legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright.” 17 U.S.C. § 301(a); see Grosso, 383 F.3d at 968. As to the first requirement, the leading treatise in this field recognizes that the scope of the subject matter of copyright law is broader than the protections it affords. See 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 19D.03[A][2][b] (rev. ed. 2010) (“[T]he shadow actually cast by the Act’s preemption is notably broader than the wing of its protection.” (quoting U.S. ex rel. Berge v. Bd. of Trs. of Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir.1997))). Nevertheless, the scope of copyright subject matter does not extend to ideas that are not within a fixed medium. Section 301(b) specifically excludes non-fixed ideas from the Copyright Act’s scope; the statute describes “works of authorship not fixed in any tangible medium of expression” as “subject matter that does not come within the subject matter of copyright.” 17 U.S.C. § 301(b). Ideas that are still purely airborne are thus not even within the subject matter of copyright. Once an idea has been written down or otherwise recorded, however, we have recognized that it satisfies the Copyright Act’s writing requirement because it is fixed in a tangible medium. See In re World Auxiliary Power Co., 303 F.3d 1120, 1131 (9th Cir.2002) (“[C]opyright is created every time people set to paper, or fingers to keyboard, and affix their thoughts in a tangible medium ...”).
For preemption purposes, ideas and concepts that are fixed in a tangible medium fall within the scope of copyright. See Nimmer § 19D.03[A][3]. We agree with Nimmer that state-law protection for fixed ideas falls within the subject matter of copyright and thus satisfies the first prong of the statutory preemption test, despite the exclusion of fixed ideas from the scope of actual federal copyright pro *980 tection. See 17 U.S.C. § 102 (“In no case does copyright protection for an original work of authorship extend to any idea ... [or] concept ... embodied in such work.”)
Accordingly, the major focus of litigation has been on the second prong of the preemption test: whether the asserted state right is equivalent to any of the exclusive rights within the general scope of copyright. See Grosso, 383 F.3d at 968. To survive preemption, a state cause of action must assert rights that are qualitatively different from the rights protected by copyright. In Grosso, we held that the rights created under California law emanating from Desny were qualitatively different from the rights protected by federal copyright law because a Desny claim includes an added element: an agreement to pay for use of the disclosed ideas. Id. at 967, 968; Nimmer at § 19D.03[C][2], Contract claims generally survive preemption because they require proof of such an extra element. See Benay, 607 F.3d at 629. The extra element, the implied agreement of payment for use of a concept, is a personal one, between the parties.
The California Courts of Appeal have uniformly concluded that Desny claims are not preempted because they flow from agreements and understandings different from the monopoly protection of copyright law. See Rokos v. Peck, 182 Cal.App.3d 604, 617, 227 Cal.Rptr. 480 (1986) (“[T]he rights flowing from such an agreement are qualitatively different from copyright protection, and their recognition creates no monopoly in the ideas involved.”); see also Durgom v. Janowiak, 74 Cal.App.4th 178, 186-87, 87 Cal.Rptr.2d 619 (1999). The California decisions focus on the personal nature of the relationship formed in idea submission cases: “The creation of an implied-in-fact contract between an author, on the one hand, and an agent, producer, or director, on the other hand, is of such a personal nature that it is effective only between the contracting parties.” Rokos, 182 Cal.App.3d at 617, 227 Cal.Rptr. 480 (citing Chandler v. Roach, 156 Cal.App.2d 435, 441, 319 P.2d 776 (1957)). Thus, it is unlike a copyright that is a public monopoly. See also ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1454 (7th Cir.1996) (“A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create ‘exclusive rights.’ ”). The rights protected under federal copyright law are not the same as the rights asserted in a Desny claim, and the California state courts have recognized this consistently over the decades.
In recent years, litigation has, not surprisingly, moved to the federal courts where defendants have hoped for greater success in pressing for copyright preemption. See Glen L. Kulik, Copyright Preemption: Is This the End of Desny v. Wilder?, 21 Loy. L.A. Ent. L.Rev. 1, 14 (2000) (“[B]ecause idea submission cases are now regularly removed to federal court, it is unlikely state courts will address the issue.” (footnote omitted)). Defendants were initially quite successful in federal court. See, e.g., Selby v. New Line Cinema Corp., 96 F.Supp.2d 1053, 1061-62 (C.D.Cal.2000); Endemol Entm’t v. Twentieth Television Inc., 48 U.S.P.Q.2d 1524, 1528 (C.D.Cal.1998); Worth v. Universal Pictures, Inc., 5 F.Supp.2d 816, 822 (C.D.Cal.1997) (“Movie screenplays, the subject matter at issue, are encompassed within the federal copyright law. Therefore, Plaintiffs’ cause of action for breach of implied contract is preempted.”).
In a later case, however, a district court held that an implied-in-fact contract claim survived Copyright Act preemption because it was substantively different from a copyright claim: “[T]he whole purpose of the contract was to protect Plaintiffs rights to his ideas beyond those already *981 protected by the Copyright Act----” Groubert v. Spyglass Entm’t Group, No. CV 02-01803, 2002 WL 2031271, at *4 (C.D.Cal. July 23, 2002). Nimmer expressly approved this decision. See Nimmer § 19D.03[c][2], We agreed with this assessment when we decided in Grosso that copyright law does not preempt an implied contractual claim to compensation for use of a submitted idea. We reaffirm that rule today.
This approach not only accords with the Copyright Act’s preemption guidelines, but it also recognizes the gap that would otherwise exist between state contract law and copyright law in the entertainment industry. The Desny innovation serves to give some protection for those who wish to find an outlet for creative concepts and ideas but with the understanding that they are not being given away for free. Without such legal protection, potentially valuable creative sources would be left with very little protection in a dog-eat-dog business. See Woody Allen, CRIMES AND MISDEMEANORS (Orion Pictures 1989) (“Show business is worse than dog-eat-dog. It’s dog-doesn’t-return-other-dog’s-phoneealls.”). Thus we were correct when we observed that “[c]ontract law, whether through express or implied-in-fact contracts, is the most significant remaining state-law protection for literary or artistic ideas.” Benay, 607 F.3d at 629. The dissent misses the point when it tries to limit protection to those who seek payment, and exclude the plaintiffs who want a piece of the action and contractual agreement on the terms of the defendant’s use.
Plaintiffs’ claim for breach of confidence also survives copyright preemption. The claim protects the duty of trust or confidential relationship between the parties, an extra element that makes it qualitatively different from a copyright claim. See Computer Assocs. Int’l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir.1992); Fischer v. Viacom Int’l, Inc., 115 F.Supp.2d 535, 542 (D.Md.2000); Berkla v. Corel Corp., 66 F.Supp.2d 1129, 1150-51 (E.D.Cal.1999); Nimmer at § 19D.03[C][1].
V. Sufficiency of the Complaint as to the Breach of Implied Contract and Breach of Confidence Claims
Defendants argue that the complaint fails to allege sufficient facts to make out a claim for breach of implied contract. They assert that it lacks any allegation (1) that Montz and Smoller disclosed their idea for sale, (2) that they expected to be reasonably compensated for the idea, and (3) that defendants knew the conditions on which it was offered. Yet the complaint makes all three allegations and closely tracks the complaint we found sufficient in Grosso.
Defendants similarly argue that Montz and Smoller failed to allege sufficient facts to make out their claim for breach of confidence. They argue that there is no allegation (1) that plaintiffs disclosed “confidential and novel information,” and (2) that defendants knew it was supposed to be kept confidential. See Entm’t Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1227 (9th Cir.1997). But the complaint clearly contains these allegations as well.
VI. Conclusion
The judgment of the district court is REVERSED and the matter REMANDED for further proceedings on plaintiffs’ remaining claims.