**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BEST CARPET VALUES, INC.; THOMAS D. RUTLEDGE, on behalf of themselves and all others similarly situated, | No.22-15899 |
| | D.C. No. 5:20-cv-04700-EJD |
| *Plaintiffs-Appellees*, | |
| v. | OPINION |
| GOOGLE, LLC, | |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted September 13, 2023
San Francisco, California

Filed January 11, 2024

Before:  J. Clifford Wallace, Sidney R. Thomas, and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Wallace

# SUMMARY[*]

## California Law

The panel reversed the district court's denial of Google, LLC's motion to dismiss plaintiffs' putative class action asserting California state-law claims arising from Google's placement of search results on copies of their websites.

Plaintiffs challenged the way Google displayed websites in Search App on Android phones from March 2018 to April 2020. Plaintiffs argued that by displaying frame and half-page digests, Google occupied valuable space on the websites of class members that Google should have paid for because it obtained all the benefits of advertising from use of that space. The district court certified for interlocutory review four questions that were potentially dispositive of the case.

Addressing plaintiffs' trespass to chattels claim and the first certified question, the panel held that *Kremen v. Cohen*, 37 F.3d 1024 (9th Cir. 2003), should not be extended to protect as chattel the copies of websites displayed on a user's screen. An application of *Kremen's* three-part test led to the conclusion that a cognizable property right did not exist in a website copy. Accordingly, plaintiffs' trespass to chattels claim must be dismissed.

Addressing plaintiffs' state-law implied-in-law contract and unjust enrichment claim and the third certified question, the panel held that website owners cannot invoke state law

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

to control how their websites are displayed on a user's screen without preemption by federal copyright law. The panel applied a two-part test to determine whether plaintiffs' state-law claim was preempted by the Copyright Act. Applying step one, the manner that plaintiffs' websites were displayed fell within the subject matter of federal copyright law. Applying step two, the rights asserted by plaintiffs' implied-in-law contract and unjust enrichment claim were equivalent to the rights provided by federal copyright law. In addition, plaintiff's state-law claim did not carry "an extra element" as compared to a federal copyright claim. Accordingly, the panel concluded that plaintiffs' state-law claim was preempted by federal copyright law.

Because the first and third question were dispositive, the panel did not reach the two remaining certified questions. The panel reversed the order denying Google's motion to dismiss, and remanded with instructions to dismiss.

---

**COUNSEL**

Fred A. Rowley Jr. (argued) and Victor H. Jih, Wilson Sonsini Goodrich & Rosati, Los Angeles, California; David Kramer, Dylan Byrd, and Dale R. Bish, Wilson Sonsini Goodrich & Rosati, Palo Alto, California; Paul N. Harold, Wilson Sonsini Goodrich & Rosati, Washington, D.C.; Ali Reza Rabbani, Paul Hastings LLP, Los Angeles, California; for Defendant- Appellant.

John A. Lawson (argued), Edelson PC, San Francisco, California; Ryan D. Andrews and Roger J. Perlstadt, Edelson PC, Chicago, Illinois; Alexander H. Schmidt, Alexander H. Schmidt, Colts Neck, New Jersey; Eric J.

Artrip, Mastando & Artrip LLC, Huntsville, Alabama; Asil Hashiri, Mashiri Law Firm APC, San Diego, California; for Plaintiffs-Appellees.

---

**OPINION**

WALLACE, Circuit Judge:

Google, LLC (Google) appeals from the district court's denial of its motion to dismiss Plaintiffs' putative class action asserting California state-law claims arising from Google's placement of search results on copies of their websites. We have jurisdiction over this timely interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We reverse and remand with instructions to dismiss the Complaint.

I.

"At the motion to dismiss stage, we assume factual allegations stated in the Complaint filed by Plaintiff[s] to be true." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 848 (9th Cir. 2016). Google provides internet services and products, most famously the google.com search engine, the Android mobile operating system, and the web browser Google Chrome. Google integrates "Search App" into its Android mobile operating system. The Search App enables a user to conduct internet searches directly from the home screen of their Android phone without opening a web browser. During the class period, Search App typically appeared as a search bar at the top of the Android home screen.

When a user typed a website address into the browser, Search App (like most web browsers) connected to the server hosting the website and "obtain[ed] a copy of the

requested website page from the host web server." Search App then "deliver[ed] the copy to the user by translating the website's codes and recreating the website page on the user's . . . mobile device screen." If a user clicked a link on the page, the click was "transmitted back over the internet to the host web server, from which the hosted website [could] then transmit responsive information," such as a different website page. Plaintiffs explicitly alleged that "Google did not trespass on the source websites located on [Plaintiffs'] web servers."

Plaintiffs challenge the way Google displayed websites in Search App on Android phones from March 2018 to April 2020. During this period, Search App displayed the requested website page with a "frame" at the bottom of the page stating, for example, "VIEW 15 RELATED PAGES." The frame gave the user the option of clicking a button to expand the frame to display half-page banners advertising related websites, occupying up to eighty percent of the screen size and shadowing the remaining twenty percent. Alternatively, the user could scroll through the website to which they navigated as normal with the frame remaining in place at the bottom of the screen. The banners were not advertisements for which Google paid Plaintiffs, but instead results automatically generated by Google's algorithms and placed there without Plaintiffs' permission. Plaintiffs alleged that the "VIEW 15 RELATED PAGES" frame and (when expanded by the user) the half-page digests blocked important content on their websites. In the case of putative class representative Best Carpet Values, Inc. (Best Carpet), the results at times displayed in the frame included links to websites owned by Best Carpet's direct competitors and negative news stories about Best Carpet's owner. Plaintiffs argue that by displaying the frame and half-page digests,

Google "occup[ied] valuable space" on the websites of class members that Google should have paid for because it "obtain[ed] all the benefits of advertising" from use of that space.

Plaintiffs filed a putative class action, asserting California state law claims for trespass to chattels, implied-in-law contract and unjust enrichment, and violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.* Google moved to dismiss the operative Complaint for failure to state a claim upon which relief could be granted. The district court, drawing in part upon our decision in *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003), mostly denied Google's motion to dismiss.[1] In response, Google moved to stay the proceedings and to certify the order for immediate interlocutory appeal under 28 U.S.C. § 1292(b). The district court granted Google's motions, and we granted Google's permission to file this appeal.

## II.

"We review de novo a district court's denial of a motion to dismiss under Rule 12(b)(6)." *Olympic Forest Coal. v. Coast Seafoods Co.*, 884 F.3d 901, 905 (9th Cir. 2018).

## III.

The district court certified for our interlocutory review four "novel and difficult" questions of law that it believed were potentially dispositive of the case. We conclude that

---

[1] The district court dismissed the UCL claim under the "unfair" part but left intact the claim under the "unlawful" part.

the first and third questions are indeed dispositive, thus we do not address the second or fourth.**[2]**

## A.

As to the first question, "[w]hether [*Kremen*] should be extended to protect as chattel the copies of websites displayed on a user's screen," we answer in the negative.**[3]**

Trespass to chattels, "[d]ubbed by Prosser the 'little brother of conversion,' . . . allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion.'" *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350 (2003), citing W. Page Keeton, et al., Prosser and Keeton on Law of Torts § 14, pp. 85–86 (5th ed. 1984). Although California law recognizes "property" in "every intangible benefit and prerogative susceptible of possession or disposition," *Holistic Supplements, L.L.C. v. Stark*, 61 Cal. App. 5th 530, 548 (2021) (internal quotations and citation omitted), it does not similarly call courts to use property law "to displace other, more suitable law" in every instance. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.21 (2010) (internal citation and quotation marks omitted).

We agree with the district court that the "chattels" at issue here are the copies of Plaintiffs' websites. Plaintiffs

---

[2] The questions not reached are: "(2) Whether trespass to chattels can be based on 'functional harm or disruption' to a website even though there is no 'physical harm to their websites'" and "(4) Whether the risk consumers may be confused or misled by deceptive advertising defeats Google's First Amendment right to suggest search results to users interested in viewing a particular website."

[3] Because Plaintiffs' trespass to chattels claim is without merit, we do not address whether it is preempted by the Copyright Act.

alleged so in their Complaint: "Website owners likewise have property rights . . . in the *copies of their websites* that appear on internet users' monitors and screens." Plaintiffs' attempt on appeal to eliminate the distinction between their proprietary websites and the copies of such websites is rejected. *See Airs Aromatics LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly contradic[t] an assertion made in the same proceeding.") (internal quotation marks and citation omitted, alteration in original). We thus root our trespass to chattels analysis in Plaintiffs' website copies.

Plaintiffs do not allege a possessory interest in copies of their websites sufficient to give rise to a trespass to chattels claim. Under California law, trespass to chattels "lies where an intentional interference with the *possession* of personal property" causes injury. *Hamidi*, 30 Cal. 4th at 1350–51 (emphasis added), quoting *Thrifty–Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566 (1996). Plaintiffs assert only a conclusory allegation that they have "possessory interests" in the copies of their websites that are transmitted to a user's device upon a request from Search App. We do not accept this legal conclusion as true. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (stating an adequate complaint must contain "well-pleaded facts, not legal conclusions"). Nor should we. Under Plaintiffs' theory, they maintain a possessory interest in an intangible copy that (1) is created when a user visits a website via the Search App, (2) exists on the user's device, and (3) is deleted by the user when they leave the page. Plaintiffs' possessory interest is thus entirely dependent on actions taken by an individual user unassociated with Plaintiffs or their websites. A possessory interest does not lie under these circumstances.

Nor do Plaintiffs allege a cognizable property interest in the website copies that may serve as the basis for a trespass to chattels claim.[4]    The district court's analysis to the contrary misreads both the governing law and Plaintiffs' Complaint.    The district court reasoned that "[c]onsistent with [*Kremen*] and subsequently issued cases . . . a *website* can be the subject of a trespass to chattels claim."    In *Kremen*, we held that the California law of conversion applied to an internet *domain name*, not the website itself or other intangible assets attendant to the website.  *See* 337 F.3d at 1030.  And Plaintiffs' Complaint highlights that a website copy and its domain name are different concepts, explaining that "[a] website is a digital document built with software and housed on a computer called a 'web server,' which is owned or controlled in part by the website's owner" while a domain name is a unique identifier "which enables an internet user to find the web server on which the website resides."  For these reasons, the website copies are the proper focus of the property-interest inquiry.

The district court similarly erred in concluding that Plaintiffs have a cognizable property interest in website copies.  In *Kremen*, we applied the following three-part test to conclude that a property right existed in a domain name: "First, there must be an interest capable of precise definition;

---

[4] Contrary to Plaintiffs' assertion, Google did not waive its argument against Plaintiffs' property interest in the website copies.  The district court's certification order granted Google permission to seek our review on the question of whether *Kremen* "should be extended to protect as chattel the copies of websites displayed on a user's screen."  Google's contention that Plaintiffs do not allege a cognizable property interest in the website copies, one of the elements of a trespass to chattels claim, *Hamidi*, 30 Cal. 4th at 1350–51, sits comfortably within the scope of the district court's order.

second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." 337 F.3d at 1030, quoting *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992). Decades later, this "test [still] stakes out useful guideposts" for determining the existence of a property right when addressing a question involving intangible property. *Holistic Supplements*, 61 Cal. App. 5th at 553.

Application of *Kremen*'s three-part test here leads to the conclusion that a cognizable property right does not exist in a website copy.

First, a website copy is not "capable of precise definition" because there is no single way to display a website copy. *Kremen*, 337 F.3d at 1030. As Plaintiffs acknowledge in the Complaint, a web browser "obtains a copy of the requested website page . . . [and] translate[s] the website's codes [to] recreat[e] the website page on the user's computer monitor or mobile device screen."     This translation of website code into a visual appearance necessarily varies across browsers and devices. Plaintiffs respond that the lack of a fixed display does not defeat their property interest. Although in *Kremen* we held that updating records in a document did not defeat a finding of a property interest, *id.* at 1035, Plaintiffs' argument elides the core inquiry of the "capable of precise definition" part. California law requires that the property interest be "well-defined" and "like staking a claim to a plot of land at the title office." *Id.*

at 1030.    A website copy possesses neither of these qualities.[5]

Second, a website copy is not "capable of exclusive possession or control."  *Id.*  Plaintiffs have not alleged, nor could they allege, that they retain control over the copies of their websites that are generated and sent to users' devices. Unlike a domain name, where the *registrant* "decides where on the Internet those who invoke that particular name— whether by typing it into their web browsers, by following a hyperlink, or by other means—are sent[,]" *id.*, once the website copy is generated and sent to the user's device, *users* have control over what to do with it—whether to click on a link on Plaintiffs' sites, resize the page, navigate away from the page themselves, or click on one of the links provided in the results.

Plaintiffs' invocation of Cal. Civ. Code § 655 does not remedy this lack of control.  Section 655 states in relevant part: "There may be ownership of all inanimate things which are capable of appropriation or of manual delivery; . . . of such products of labor or skill as the composition of an author, the good will of a business, trade marks and signs, and of rights created or granted by statute."  Cal. Civ. Code § 655.   But section 655 merely suggests *what* kinds of property may be owned.  The statute says nothing about *how* such property interests are defined, which is a necessary exercise for determining whether that property may serve as

---

[5] Plaintiffs claim a particular interest in the portion of the screen (in their words, "advertising space") that is occupied by the Search App's leaderboard. But whether that space even exists and how it is displayed rely on how the website's codes are translated as well as the user's choices.

the basis of a state-law claim.  *See Holistic Supplements*, 61 Cal. App. 5th at 548, 553.

Third and finally, there is no "legitimate claim to exclusivity" over website copies.  *Kremen*, 337 F.3d at 1030. Plaintiffs themselves recognize that they do not control how their websites are displayed on different devices or web browsers.  This lack of exclusivity renders website copies fundamentally different from other types of intangible property recognized as being subject to California state-law property claims.  *See G.S. Rasmussen*, 958 F.2d at 903 (regulatory certificate); *Payne v. Elliot*, 54 Cal. 339, 342 (1880) (corporate stock); *Holistic Supplements*, 61 Cal. App. 5th at 553 (tax registration certificate); *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 211 (2014) (credit line from a credit card company); *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 125 (2007) (business's net operating loss); *Golden v. State*, 133 Cal. App. 2d 640, 643 (1955) (liquor license).  Because Plaintiffs do not control how the copies of their websites are shown in different environments, they have no legitimate claim to exclusivity over those copies.

Our conclusion necessarily follows from property law's core tenets.  "[P]roperty law has long protected an owner's expectation that he will be relatively undisturbed at least in the possession of his property."  *Loretto v. Teleprompter Manhattan CTV Corp.*, 458 U.S. 419, 436 (1982).  These "[g]eneral principles of property law require that a property owner have the legal right to exclude others from use and enjoyment of that property."  *Alderson v. United States*, 686 F.3d 791, 796 (9th Cir. 2012).  Without such legal entitlement in this case, property law provides no remedy for an alleged trespass to chattels claim.

We hold that there is no cognizable property interest in website copies that may serve as the basis for a trespass to chattels claim under California law.**[6]** The district court erred in allowing Plaintiffs' case to proceed on this theory.

## B.

Having concluded that Plaintiffs' trespass to chattels claim must be dismissed, we turn to Plaintiffs' state-law implied-in-law contract and unjust enrichment claim. This claim, and Google's argument in response thereto, implicates the third question certified by the district court for interlocutory appeal: "Whether website owners can invoke state law to control how their websites are displayed on a user's screen without preemption by federal copyright law." Again, we answer the certified question in the negative.

As we have previously explained, "[t]he Copyright Act [(the Act)] affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017), citing 17 U.S.C. § 106. The Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title." 17 U.S.C. § 301(a). In other words, section 301(a) works "to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to

---

[6] We therefore have no reason to revisit *Kremen*'s discussion of the "merger rule" under California law. *See* 337 F.3d at 1033.

works," if the rights in question fall "within the scope of the Federal copyright law."  *Maloney*, 853 F.3d at 1010, quoting H.R. Rep. No. 94–1476, at 130 (1976).

"We have adopted a two-part test to determine whether a state law claim is preempted by the Act."  *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006). "First, we decide whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103.  Second, assuming it does, we determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Maloney*, 853 F.3d at 1010 (internal citations and quotation marks omitted).

We agree with the district court that step one of our preemption test is satisfied here because the manner that Plaintiffs' websites are displayed falls within the subject matter of federal copyright law.

"[T]he subject matter of copyright encompasses 'original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.'"  *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1069 (9th Cir. 2018), quoting 17 U.S.C. § 102(a).  "A work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).

Plaintiffs concede, and Google agrees, that commercial websites are copyrightable.  We have not directly addressed

this question, but several district courts in our circuit have adopted the parties' position. *See, e.g.*, *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1160–61 (C.D. Cal. 2018); *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1248 (W.D. Wash. 2007).

We previously recognized that federal copyright law extends to "works of authorship" beyond those works enumerated in 17 U.S.C. § 102(a). For example, we held that computer software, including "the literal components" like "the source and object code," is subject to copyright protection and that "the non-literal components of a program, including the structure, sequence and organization and user interface" may also be protected "depend[ing] on whether . . . the component in question qualifies as an expression of an idea, or an idea itself." *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989). We later added that computer software's "dynamic non-literal elements" (users' real-time experience) were subject to copyright protection. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 954 (9th Cir. 2010). The Supreme Court has endorsed our understanding of computer software's copyrightability. *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1196 (2021).

A commercial website similarly qualifies for federal copyright protection even though it is not explicitly mentioned in section 102(a). A website is a "work[] of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Although the exact appearance of the website may vary across devices, the website's content does not change unless and until the website creator makes a change to the underlying source code. *See Hunley v. Instagram*, 73 F.4th 1060, 1063 (9th Cir. 2023). Similarly, websites possess copyrightable literal elements (source

code); non-literal elements (including "logos, images, fonts, videos and sound effects"); and dynamic non-literal elements (such as the experience of viewing the website). *Ticketmaster*, 315 F. Supp. 3d at 1160–61, citing *MDY Indus.*, 629 F.3d at 952. Furthermore, the website's content is "perceived, reproduced, or otherwise communicated" "with the aid of a machine or device," 17 U.S.C. § 102(a), because an internet browser connects to the website's server, translates the website's code, and recreates the content specified by the code on the user's device. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155–56 (9th Cir. 2007). Therefore, we conclude that a commercial website, like computer software, may qualify for copyright protection.

On appeal, Plaintiffs attempt to recast the subject matter of their claim as "Google's advertising" and "the advertising space on Plaintiffs' websites" rather than the websites themselves. But again, Plaintiffs cannot escape their Complaint, which alleges that Search App "place[d] Google's leaderboard and half page banner ads on the *copies of the[ir] website pages*." The district court properly held that Plaintiffs alleged rights within the subject matter of federal copyright law when they challenged the manner that Google displayed Plaintiffs' websites. Plaintiffs' analogies to advertising outside of a theater or in front of a work of art similarly miss the mark. As we have explained, "the scope of the subject matter of copyright law is broader than the protections it affords." *Montz v. Pilgrim Films & Tel., Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) (en banc), citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 19D.03[A][2][b] (rev. ed. 2010). For this reason, our preemption analysis focuses on whether Plaintiffs' Complaint invokes the subject matter of federal

copyright law—it does—rather than whether Search App's advertisements infringe on Plaintiffs' copyrightable websites.

However, at step two of our preemption test, the district court erred in determining that the rights asserted in Plaintiffs' implied-in-law contract and unjust enrichment claim were not equivalent to the rights provided under 17 U.S.C. § 106.

Section 106 grants copyright owners the "'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work." *Maloney*, 853 F.3d at 1019, quoting 17 U.S.C. § 106. "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights." *Id.* (citation omitted). In this way, "[t]he state claim must have an extra element which changes the nature of the action." *Laws*, 448 F.3d at 1143, quoting *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir. 1987).

The district court reasoned that Plaintiffs' claim was not preempted because "Plaintiffs are not asserting infringement of any right to the reproduction, performance, distribution, or display of their websites." But "[c]opyrightability is a different question from infringement and is determined on different legal principles." *SAS Inst., Inc. v. World Programming Ltd.*, 64 F.4th 1319, 1338 (Fed. Cir. 2023) (Newman, J., dissenting). Here, the district court improperly focused on the nature of the *complained of action* when copyrightability—and by extension, the preemption analysis—must focus on the nature of the *right at issue*.

We need not decide whether it is more appropriate to characterize Plaintiffs' Complaint as implicating rights to (a) display or reproduce copies or (b) prepare derivative works because the Complaint invokes both rights and both rights are recognized under federal copyright law.[7]   Plaintiffs alleged that Search App "obtains a copy of the requested website page from the host web server and delivers the copy to the user by translating the website's codes" and then "recreat[es] the website page on the user's . . . mobile device screen."   Displaying and reproducing a copy of a copyrighted work (Plaintiffs' website) falls squarely within the scope of 17 U.S.C. § 106. *See MDY Indus.*, 629 F.3d at 938.   Plaintiffs further alleged that Search App "superimpose[ed] advertisements on their websites' homepages and other landing pages" when displayed on screens.   Google's reproductions of Plaintiffs' websites, which necessarily vary in appearance on users' screens, can be recognized as an act of "prepar[ing]" "derivative works." *See Jarvis v. K2 Inc.*, 486 F.3d 526, 531–32 (9th Cir. 2007) (holding as derivative works collage ads where the defendant "shrank, expanded, distorted, overlaid and otherwise edited the [plaintiff's] original images, while also combining them with photos taken by other photographers, additional graphics, the [defendant's] logo and marketing slogans.").

---

[7] As one treatise has suggested, the right to prepare "derivative works" may be superfluous in most cases because the statute defines a "derivative work" as one "based upon one or more preexisting works," in other words, a copy.  2 Nimmer on Copyright § 8.09[A][1], citing 17 U.S.C. § 101; *see also Benny v. Loew's, Inc.*, 239 F.2d 532 (9th Cir. 1956), *aff'd sub nom. Columbia Broad. Sys. Inc. v. Loew's Inc.*, 356 U.S. 43 (1958) (examining an earlier but substantially similar version of the Copyright Act and holding that infringement applied to both the "other version" and "copy" of the copyrightable material).  Plaintiffs' state-law claim is preempted regardless of how we characterize the right.

Either way, these allegations implicate the exclusive rights to copyright holders bestowed by federal statute.

Having determined that Plaintiffs' implied-in-law contract and unjust enrichment claim falls within the subject matter of and asserts rights equivalent to those provided by federal copyright law, the only remaining task is to inquire whether Plaintiffs' state-law claim carries "an extra element" as compared to a federal copyright claim. It does not.

"The elements of a cause of action for unjust enrichment are simply stated as receipt of a benefit and unjust retention of the benefit at the expense of another." *Tufeld Corp. v. Beverly Hills Gateway, L.P.*, 86 Cal. App. 5th 12, 31–32 (2022) (internal quotation marks and citation omitted). As a leading treatise has opined, "a state-law cause of action for unjust enrichment or quasi contract should [generally] be regarded as an 'equivalent right' and, hence, preempted insofar as it applies to copyright subject matter." 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.15[G] (2023).

The district court concluded that Plaintiffs' claim was not preempted because it contained "extra elements" but did not articulate what those extra elements were. Instead, the district court opined that Plaintiffs' claim was "qualitatively different from a copyright claim" apparently because "Google allegedly covered up or obscured a portion of Plaintiffs' websites from Android phone users for [Google's own] financial benefit." But such alleged action by Google is strikingly similar to "distort[ing], overla[ying] and otherwise edit[ing] original images, while also combining them with . . . additional graphics, . . . and marketing slogans," which we have found to qualify as derivative work.

*Jarvis*, 486 F.3d at 531.  Furthermore, the alleged financial benefit to Google maps neatly onto the damage requirement for any successful copyright claim.  *See* 17 U.S.C. § 504(a)(1) (holding that a copyright infringer may be liable for "the copyright owner's actual damages and any additional profits of the infringer").  Therefore, the alleged benefit to Google from Search App's display of Plaintiffs' website, such as there was one, is not an "extra element" beyond the elements of federal copyright law.  Because the implied-in-law contract and unjust enrichment claim "is not materially different from a claim for copyright infringement that requires a plaintiff to prove that the defendant used, reproduced, copied, or displayed a copyrighted work," it is preempted. *Forest Park Pictures v. Univ. Tel. Network, Inc.*, 683 F.3d 424, 432 (2d Cir. 2012); *accord Del Madera*, 820 F.2d at 977.

The main case upon which Plaintiffs rely to rebut the notion that their unjust enrichment claim lacks any extra element of a copyright claim, *Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2004), is readily distinguishable.  That case involved an implied-in-*fact* contract containing an added element of an explicit "agreement to pay for use of the disclosed ideas." *Montz*, 649 F.3d at 980, citing *Grosso*, 383 F.3d at 967–68.  In contrast, here Plaintiffs advance a theory based on a contract implied-in-*law* without any additional agreement, either explicit or implicit.

Finally, even construing Plaintiffs' implied-in-law contract and unjust enrichment claim as an allegation that Google exceeded the scope of its license does not save the claim from preemption. *See MDY Indus.*, 629 F.3d at 940 ("[W]e have held that the potential for infringement exists [] where the licensee's action (1) exceeds the license's scope

(2) in a manner that implicates one of the licensor's exclusive statutory rights."). Plaintiffs alleged that Google has a license to reproduce copies of their websites that users may access on their mobile screens through Google's browser, and that Google exceeded this license by "superimposing non-consensual ads onto" their websites. The district court agreed, indicating that another reason that Plaintiffs' claim was not preempted was that "Plaintiffs want and expect Google to copy and display their websites in Chrome browser and Search App, and acknowledge that Google has license to do so." But Plaintiffs do not specify the scope of Google's license—by indicating if or how Google's license to display copies of their websites was conditioned in any way. Therefore, it is not clear what "cognizable legal right of [Plaintiffs] has been violated." *Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 134 (1986); *see also S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087–88 (9th Cir. 1989) (holding that "[t]he critical question is not the existence but the scope of the license").

We hold that Plaintiffs' state-law claim is preempted under federal copyright law. The district court erred in permitting Plaintiffs' case to proceed on this theory.

## IV.

For these reasons, we conclude that the district court erred in denying Google's motion to dismiss and allowing Plaintiffs to advance their California state-law claims of trespass to chattels and unjust enrichment. Their remaining claim, based on UCL's prohibition of an "unlawful . . . business act or practice," requires a predicate state or federal law claim. *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003), citing Cal. Bus. &

Prof. Code § 17200 and *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). No predicate claims remain and Plaintiffs cannot proceed on their UCL claim alone. Accordingly, we reverse the district court's order denying Google's motion to dismiss and remand the case with instructions to dismiss.

**REVERSED AND REMANDED.**